UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| FRED C. CARUSO, | CIVIL ACTION NO. 5:17-CV-326-KKC |
| Plaintiff, | |
| V. | MEMORANDUM OPINION AND ORDER |
| NELSON E. CLEMMENS, | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Clemmens' objections to the Bankruptcy Judge's proposed findings of fact and conclusions of law in this case.[1] (DE 4; DE 16). For the reasons stated below, Clemmens' objections are overruled. Likewise, Caruso's motion for partial summary judgment is granted, (DE 3); Clemmens' first motion for summary judgment, (DE 1), is granted; and Clemmens' second motion for summary judgment, (DE 2), is denied.

## I. FACTUAL BACKGROUND

The parties stipulate the following facts. (DE 4 at 3–6).

Revstone Industries, LLC, an automobile business and Delaware LLC, was founded in 2008 by and among three Children's Trusts, which were established for the benefit of the children of Revstone's chairman and sole board member: George S. Hofmeister. In 2011, the Children's Trusts assigned their membership interests in Revstone to Ascalon Enterprises, LLC, for which Hofmeister was also the chairman and sole member the board. *Id.* at 3.

---

[1] This matter is best considered in light of *Caruso v. Clemmens*, 5:17-CV-325-KKC, which involves the same parties in a slightly different factual scenario.

1

Revstone—founded by Hofmeister's Childrens' Trusts, and owned by Hofmeister's Ascalon Enterprises—operated its business through the direct or indirect ownership and management of approximately thirty-two (32) subsidiary entities. *Id.*

Clemmens met Hofmeister in 1986. In 2007, Hofmeister selected Clemmens to serve as the trustee of Hofmeister's family trusts. *Id.*

In 2009, Revstone transferred $20,000.00 to Clemmens via wire to pay for thoroughbred horses. The wire transfer indicates that the beneficiary of the transfer was the "Nelson Clemmens Toroughbred [sic] Account." This is known as the "Horse Transfer." (DE 3 at 69).

In 2010, Revstone twice transferred $5,000.00 to Clemmens via wire for trustee's fees (totaling $10,000.00). Both transfers include the descriptor "DESC TRUSTEE." These are known as the "Trustee Transfers." *Id.*

In 2011, Revstone made two wire transfers to Stone Spire, LLC, for $16,000.00 and $15,000.00 (totaling $31,000.00). Stone Spire, LLC, is owned in equal parts by Clemmens, Hofmeister,[2] and Leo Govoni. These are known as the "Stone Spire Transfers." *Id.*

From 2010 through 2011, Clemmens allegedly obtained loans for Revstone and its affiliates totaling over $23 million. During this time, Revstone made eight wire transfers to Clemmens, totaling $675,000.00. (DE 4 at 4–5). Three of these transfers contained descriptors indicating that they were likely finder's fees paid to Clemmens for his service in obtaining the loans. These are known as the "Finder's Fee Transfers." (*Id.*; DE 3 at 69–70).

In December 2012, Revstone filed for Chapter 11 relief in the United States Bankruptcy Court for the District of Delaware. In 2014, Revstone filed a complaint in that Delaware court seeking to avoid and recover its payments to Clemmens as fraudulent transfers. In 2016,

---

[2] Hofmeister's 1/3 interest in Stone Spire, LLC, was held by him through his ownership of Triton Farm, LLC, one of his business entities. (DE 1 at 4).

2

after resolving some procedural issues, this matter was transferred to the Eastern District of Kentucky. (DE 4 at 5–6).

The parties filed cross motions for summary judgment. (DE 1; DE 2; DE 3). Caruso, the Bankruptcy Trustee for the Revstone/Spara Litigation Trust, seeks summary judgment against Clemmens for the recovery of the Horse and Trustee Transfers based on a theory of constructive fraud pursuant to 11 U.S.C. § 544 and 550, and Del. Cod. Ann. 6 §§ 1301–12. (DE 3 at 3 ☐ 1). Caruso also seeks judgment on the matter of Revstone's insolvency. *Id.* Clemmens seeks summary judgment for the dismissal of Caruso's claims for the recovery of the Stone Spire Transfers. (DE 1 at 3–4). Clemmens also seeks summary judgment for Caruso's claims for the recovery of the Finder's Fee Transfers. (DE 2 at 2).

The Bankruptcy Court held that Caruso's motion, (DE 3), should be granted, enabling the avoidance and recovery of the Horse and Trustee Transfers from Clemmens. (DE 4 at 4). In addition, the Bankruptcy Court held that Clemmens' motion, (DE 1), should granted, dismissing Caruso's claims against Clemmens for the recovery of the Stone Spire Transfers. (DE 4 at 4). Finally, the Bankruptcy Court held that Caruso is entitled to judgment as a matter of law on Revstone's insolvency, (DE 3), and that there are questions of material facts precluding judgment as a matter of law as to the Finder's Fee Transfers, (DE 2; DE 4 at 4). Clemmens presents nine (9) objections to the Bankruptcy Court's determinations. (DE 16).

## II. STANDARDS OF REVIEW

The Court reviews *de novo* the portions of the Bankruptcy Court's decision to which Clemmens objects. Fed. R. Bankr. P. 9033(d). The Court may accept, reject, or modify the Bankruptcy Court's proposed findings of fact and conclusions of law as required. *In re Sahuaro Petroleum & Asphalt Co.*, 170 B.R. 689 (C.D. Cal. 1994), *aff'd* 89 F.3d 846 (9th Cir. 1996), *cert. denied* 519 U.S. 992 (1996). The Bankruptcy Court opinion is to be reviewed with no deference, presumption of validity or correctness. *Waldman v. Stone*, 599 F. App'x 569,

3

572 (6th Cir. 2015) (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir.1990)). Nonetheless, the Court is under no obligation to expand the Record beyond that presented. Fed. R. Bankr. P. 9033(d); *Waldman*, 599 F. App'x at 572 (citing *Deutsche Bank Nat'l Trust Co. v. Tucker*, 621 F.3d 460, 464 (6th Cir.2010)).

On a motion for summary judgment, the movant has the burden of showing that there are no genuine issues of material fact in dispute. The evidence, together with all permissible inferences, is construed in the light most favorable to the opposing party. Fed. R. Bank. P. 7056 (incorporating Fed. R. Civ. P. 56); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Once the moving party has made this initial showing, the opposing party must come forward with affirmative evidence sufficient "to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Summary judgment must be entered if, "after adequate opportunity for discovery," a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 940 (6th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted)).

## III. ANALYSIS

Caruso seeks to recover pursuant to 11 U.S.C. § 544 and Del. Code. Ann. 6 § 1305, which is substantially the same as 11 U.S.C. § 548. To prevail, Caruso must show by a preponderance of the evidence that (1) Revstone made a transfer for less than reasonably equivalent value; and (2) Revstone was insolvent or became insolvent due to the transfer, engaged or about to engage in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction, or intended to incur, or believed

4

or reasonably should have believed that it would incur, debts beyond its ability to pay. *See Miller v. Greenwich Capital Fin. Prods., Inc.* (*In re Am. Bus. Fin. Servs., Inc.*), 471 B.R. 354, 378 n.17 (Bankr. D. Del. 2012); *In re Plassein Int'l Corp.*, 428 B.R. 64, 67 (D. Del. 2010). Caruso must also prove Clemmens is the person "for whose benefit such transfer was made" to recover from him under 11 U.S.C. § 550(a).

## A. Revstone's Insolvency

There is no genuine issue as to Revstone's insolvency. Caruso's arguments rely on the expert report and opinion of James Lukenda, who concludes that Revstone was balance sheet insolvent and without adequate capital to pay its debts from its formation in 2008. (*See, e.g.*, DE 3 at 4 (discussing the Lukenda report and Revstone's significant debt load from its formation)). The Lukenda report shows by a preponderance that Revstone was insolvent when these thirteen transfers were made, and Clemmens has not met his burden to indicate specific facts that show otherwise, (DE 1; DE 2; DE 3 at 18–22, 33–41; DE 16), because Clemmens has failed to introduce affirmative evidence that contradicts or overcomes the Lukenda report. *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2sd 1472, 1477 (6th Cir. 1986) ("Essentially, a motion for summary judgment is a means by which to challenge the opposing party to 'put up or shut up' on a critical issue.").

Rather than present affirmative evidence to contradict or undermine the Lukenda report, Clemmens makes general *Daubert-esque* challenges, arguing that the Lukenda report would be inadmissible at trial and finding fault with its analysis. (DE 16). For example, Clemmens takes issue with the method Lukenda employed to determine the fair value of Revstone. In the context of an insolvency analysis, there are two methods to determine value: going concern value and liquidation value. *EBC I, Inc. v. Am. Online, Inc.* (*In re EBC I, Inc.*), 380

5

B.R. 348, 355 (Bankr. D. Del. 2008). If a company is on its way out of business, going concern valuation is inappropriate. *Fryman v. Century Factors* (*In re Art Shirt, Ltd, Inc.*), 93 B.R. 333, 341 (E.D. Pa. 1988). For that reason, Lukenda determined the liquidation value of Revstone, relying on GAAP financial statements and the fair market prices paid for the assets of Revstone. (DE 3 at 33–41 (discussing balance sheet/liquidation value)). This methodology is reasonable and is adequately explained. *Id.* The mere fact that Clemmens disagrees with the result or methodology is not enough to defeat Caruso's motion for summary judgment, especially in light of the fact that Clemmens produces no alternate methodology that Lukenda should have considered. (DE 1; DE 2; DE 16). Based on the Record before the Court, there is no question that Revstone was insolvent at the time of all these transfers. Caruso is entitled to summary judgment on the question of Revstone's insolvency. (DE 3).

### B. The Horse and Trustee Transfers

The Record reflects that there was no dispute as to the Horse or Trustee Transfers other than whether Revstone was insolvent at the time the transfers were made. (DE 3; DE 4 at 20–2; DE 16). As the Court has determined that Revstone was insolvent at all times during the relevant period, (DE 3 at 18–22, 33–41), Caruso is entitled to summary judgment on the Horse and Trustee Transfers, (DE 3).

Revstone was in the automobile industry, (DE 1; DE 2; DE 3; DE 4), but made payments to Clemmens to pay for horses Hofmeister and Clemmens purchased for their personal use, (DE 3; DE 4). Similarly, Revstone made payments to Clemmens for his role as trustee to Hofmeister's Childrens' Trusts. (DE 3; DE 4). At the time of these transfers, Revstone was insolvent, and there is no question that Revstone received no benefit or value in return for any of these payments. *Id.* Thus the requirements of 11 U.S.C. § 544 and Del. Code. Ann. 6 § 1305 are satisfied.

Caruso also proved Clemmens is the person "for whose benefit such transfer was made" to recover from him under 11 U.S.C. § 550(a). This explanation is axiomatic. Clemmens was owed money by Hofmeister for horses purchased and services rendered. Hofmeister used Revstone funds to pay these personal debts to Clemmens. Clemmens' own testimony confirms this. (*See, e.g.*, DE 3 at 151–153). For these reasons, Caruso's motion, (DE 3), is granted, as he is entitled to summary judgment on the Horse and Trustee transfers.

### C. The Stone Spire Transfers

The Bankruptcy Court determined that Revstone was insolvent and received no value in return for the $31,000.00 in transfers to Stone Spire, LLC, but that Caruso has failed to show that Clemmens was the initial transferee or the person for whose benefit the transfer was made as is required by 11 U.S.C. § 550. (DE 4 at 21–23). The Court reaches this same conclusion. First, as noted, the Court has determined that Revstone was insolvent at the time the Stone Spire Transfers were made. (DE 3 at 18–22, 33–41). Second, as Revstone was in the automobile industry and these horses were purchased for purposes unrelated to Revstone's interests, there can be no question that Revstone received no value in return for these transfers. (DE 4 at 3). These two transfers, however, were made to Stone Spire, LLC, not Clemmens. (DE 1 at 78–86). Although Clemmens was a 1/3 owner with Hofmeister and Leo Govoni, the burden remains on Caruso to show that Clemmens somehow benefited enough from the transfers to recover against him under 11 U.S.C. § 550.

There is evidence in the Record to show that Clemmens may have been an intended beneficiary. For example, Clemmens sent one email indicating that the amounts should have been transferred either to Clemmens *or* Stone Spire. In addition, Hofmeister had wired funds to Clemmens' personal account in the past to pay for Stone Spire transactions. (DE 4 at 22). Still, on *de novo* review, this Court agrees with the Bankruptcy Court's proposed holding that this evidence is insufficient to recover against Clemmens under 11 U.S.C. § 550. Clemmens

7

did not personally receive the funds at issue, and there is no evidence that he personally benefited from Stone Spire's receipt of the funds. (*See generally* DE 1 (discussion and attachments)). This holding is consistent with precedent, as Stone Spire, LLC, was a separate legal entity from Clemmens, and Caruso does not allege some means (i.e. veil piercing) to make a connection between the two. *See, e.g.*, *In re Dreier, LLP*, 452 B.R. 451, 466 (Bankr. S.D.N.Y. 2011). For these reasons, Clemmens' motion, (DE 1), is granted, dismissing Caruso's claims against Clemmens for the recovery of the Stone Spire Transfers.

### D. The Finder's Fee Transfers

The Finder's Fee Transfers were made at a time when Revstone was insolvent, (DE 3 at 18–22, 33–41), and for the benefit of Clemmens—there is no dispute that these payments were made directly by Revstone to Clemmens, (DE 2 at 4; DE 3 at 69). There are, however, material questions of fact as to whether Revstone received reasonably equivalent value for the transfers.

As noted, from 2010 through 2011, Clemmens allegedly obtained loans for Revstone and its affiliates totaling over $23 million. During this time, Revstone made eight wire transfers to Clemmens, each of which is claimed to be a finder's fee, totaling $675,000.00. (DE 4 at 4–5). Only three of these transfers, however, contained descriptors indicating that they were finder's fees paid to Clemmens for his service in obtaining the loans. (*Id.*; DE 3 at 69–70). In addition, Lukenda found no documentation of any written agreement or evidence of services rendered by Clemmens in Revstone's records. (DE 3 at 70). Thus, even assuming the existence of such an agreement, it is unclear that the Finder's Fee Transfers, which total $685,000.00, were all made for purposes of compensating Clemmens as a financing finder. (DE 3 at 69–70; DE 4 at 2–3, 5, 24). For these reasons, this matter should proceed to trial to determine whether Revstone received reasonable equivalent value for the Finder's Fee

8

Transfers, and Clemmens second motion for summary judgment, (DE 2), is denied. 11 U.S.C. § 544; Del. Code. Ann. 6 § 1305.

## IV. OBJECTIONS

The Court wishes to express its individual consideration of Clemmens' nine (9) objections to the Bankruptcy's Court's proposed findings of fact and conclusions of law. (DE 16 (objecting to DE 4)). Although the objections now include proper citations and exhibits, (DE 5; DE 15; DE 16), they remain meritless.

1. Clemmens objects to the consideration of Lukenda's report under Fed. R. Evid. 702, and the Bankruptcy Court's conclusion of law based on that report that Revstone made the transfer while insolvent. (DE 16 at 4). For the same reasons as discussed above this objection overruled. Revstone was insolvent when the transfers were made.

2. Clemmens objects to the conclusion that he failed to support his opposition to the Lukenda report, which found Revstone to be insolvent, with specific evidence. (DE 16 at 4). Clemmens has filed financial audits by AlixPartners as exhibits that indicate Revstone's solvency. These reports do claim that Revstone was solvent. But these reports also appear to calculate Revstone's value as a going concern, (*See, e.g.*, DE 14-4 at 357 ("Net Enterprise Value")), and *id.* at 378–79). As the Bankruptcy Court correctly noted, this is inappropriate when a company is going out of business, which is why the Lukenda report used liquidation/balance sheet value. *Fryman v. Century Factors* (*In re Art Shirt, Ltd, Inc.*), 93 B.R. 333, 341 (E.D. Pa. 1988). This objection is overruled.

3. Clemmens objected to the use of liquidation value to determine Revstone's solvency. (DE 16 at 4–5). Clemmens would prefer to use going concern value. In general, there are two methods to determine value: going concern or liquidation. *EBC I, Inc. v. Am.*

9

*Online, Inc.* (*In re EBC I, Inc.*), 380 B.R. 348, 355 (Bankr. D. Del. 2008). The Court should consider the totality of the circumstances and be flexible in determining which approach to use. *Iridium Roaming, LLC v. Statutory Committee of Unsecured Creditors on behalf of Iridium Operating, LLC* (*In re Iridium Operating, LLC*), 373 B.R. 283, 344 (Bankr. S.D.N.Y. 2007). Here, given that Revstone did in fact file for bankruptcy within the two years following these fraudulent transactions, liquidation value is the most appropriate method. *See Fryman*, 93 B.R. 333, 341. This objection is overruled.

4. Clemmens objects to the Bankruptcy Court's conclusion Clemmens should have provided a published valuation standard for the Lukenda Report to use. (DE 16 at 5). This objection is overruled. As correctly stated by the Bankruptcy Court, on a motion for summary judgment, once the movant has shown there is no dispute of material fact, with inferences are drawn in favor of the nonmovant, the nonmoving party must come forward with *specific* facts that show there is a genuine issue for trial. *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The Bankruptcy Court correctly stated that Clemmens had a burden to overcome the Lukenda report, which established by a preponderance that Revstone was insolvent. Clemmens failed to meet that burden. The Bankruptcy Court is correct in noting that one of the ways Clemmens might have attempted to meet that burden, however, is by providing a published valuation standard that would call the Lukenda report into doubt. Instead, Clemmens generally relied on argument unsupported by evidence. This is insufficient. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986)

(metaphysical doubt is not enough to defeat a motion for summary judgment). For that reason, this objection is overruled.

5. Clemmens objects to the Bankruptcy Court's conclusion that the Lukenda report's methodology is sound. (DE 16 at 5). The Bankruptcy Court was within its powers to rely on the report, although this Court reviews that decision *de novo*. Fed. R. Bankr. P. 9033(d). In his objection, Clemmens does not indicate how precisely the methodology should have been different, or what exactly is flawed. This Court has also already found that the Lukenda report, (DE 3 at 18–22, 33–41), adequately describes and applies its own methods. *Fryman v. Century Factors* (*In re Art Shirt, Ltd, Inc.)*, 93 B.R. 333, 341 (E.D. Pa. 1988). For that reason, this objection is denied.

6. Clemmens objects to the Bankruptcy Court's conclusion that he had the burden of showing the pension obligations should not have been included in the Lukenda Report. (DE 16 at 5–6). This objection is overruled. Again, Clemmens does not make any coherent argument as to why his objection should be considered. The Lukenda report was considered by the Bankruptcy Court as evidence of insolvency. Clemmens had the opportunity to depose Lukenda or submit an alternate expert report, but he did neither. The method employed by Lukenda—balance sheet/liquidation value—is the appropriate analysis when a company is on its death bed. *Fryman*, 93 B.R. at 341 (E.D. Pa. 1988). The source or this litigation is the bankruptcy of Revstone, so there can be no legitimate argument that Revstone is a going concern at this time for which some other valuation method would be appropriate. There is nothing in the Record to specifically explain why or how the pension obligations of Revstone should not have been considered as liabilities for purposes of determining solvency in a balance

sheet/insolvency analysis. Clemmens' general argument will not suffice. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986).

7. Clemmens objects to the Bankruptcy Court's conclusion that there is no basis to find fault with Lukenda's Methodology. (DE 16 at 6). Clemmens appears to believe the Lukenda report is unreliable, but he does not explain his argument as to why, other than stating that Lukenda does not explain his methodology. But Lukenda does explain his methodology. (DE 3 at 18–22, 33–41). This argument fails, and this objection is overruled.

8. Clemmens objects to the Bankruptcy Court's conclusion that the Horse and Trustee Transfers should be recovered from Clemmens. (DE 16 at 6). This objection is overruled. Consistent with this Opinion and Order, the Court holds that the Horse and Trustee Transfers shall be recovered from Clemmens.

9. Clemmens objects to the Bankruptcy Court's conclusion that there are genuine issues of material fact relating to the Finder's Fee Transfers. This objection is overruled. The facts outlined in the objection, (DE 16 at 6–7), compared to the facts noted in the Lukenda report, (DE 3 at 69–70), indeed show that there are disputes as to the material facts, leaving the question of whether Revstone received reasonably equivalent value for the Finder's Fee Transfers. Thus, summary judgment is inappropriate, and this objection is overruled.

## V. CONCLUSION

Consistent with the above Opinion, the Court **ORDERS** as follows:

1. Clemmens' first motion for summary judgment, (DE 1), is **GRANTED**;

2. Clemmens' second motion for summary judgment, (DE 2), is **DENIED**;

3. Caruso's motion for partial summary judgment, (DE 3), is **GRANTED**;

4. Clemmens' objections, (DE 16), are **OVERRULED**; and

5. Caruso is **AWARDED** $20,000.00 for the Horse Transfers and $10,000.00 for the Trustee Transfers, for a total of $30,000.00, which may be collected from Clemmens.

Caruso's claim for the recovery of the Stone Spire Transfers are dismissed. For purposes of this proceeding, Revstone was under-capitalized and insolvent from its inception in 2008. Del. Code. Ann. 6 § 1305. The Finder's Fee Transfers were made for the benefit of Clemmens. 11 U.S.C. § 550. Questions remain, however, as to whether the Finder's Fee Transfers were in exchange for reasonably equivalent value. 11 U.S.C. §§ 544; Del. Code. Ann. 6 § 1305. This matter shall proceed to trial in order to resolve these remaining questions of fact.

Signed November 5, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY